## THE DE GRASSE.
### No. 12774.

District Court, E. D. New York.
May 20, 1932.

Barry, Wainwright, Thacher & Symmers, of New York City (Earle Farwell, of New York City, of counsel), for libellants.

Joseph P. Nolan, of New York City, for respondent.

BYERS, District Judge.

The libellant Addie Stix Oppenheim and her daughter, Jane, were first class passengers on the steamship De Grasse sailing from Havre for New York on October 22, 1930.

Mrs. Oppenheim fell while in her cabin, on the morning of October 28th, being in the act of climbing into her berth, and this proceeding was initiated by her to recover damages for the personal injuries thus sustained, and by her husband to recover for medical and surgical expenses, etc., arising from the injury.

Mrs. Oppenheim is a lady of sufficient years to be the mother of a grown daughter, and is five feet one inch in height, and, at the time, weighed about 140 pounds. She occupied, in cabin 82, the berth under the porthole, and her daughter, the one on the opposite side. The former's berth was 31 inches from the deck of the cabin, measured to the top of the mattress. On the first night out, so Mrs. Oppenheim and her daughter testified, the former explained to the cabin steward that she required a footstool to enable her to climb into her berth, and something lower was desired than an article of furniture then in the cabin, called a stool, and designed as a thing to sit upon.

A photograph of such an article of furniture is in evidence; it is of wicker, having four legs, and a concave seat, and appears to be of sturdy parts. The shape of the seat and its wicker construction perhaps negative an intention that it should be used to stand upon; and yet the said testimony, which was not contradicted in the deposition of the cabin steward, is clearly to the effect that such was Mrs. Oppenheim's purpose; and the steward told her that he had no lower stool which could be supplied to her.

Having thus made known her requirements to the custodian of the cabin, it is thought that a responsibility was assumed for the adequacy of the stool to meet the stated needs.

If she had asked for a ladder to afford means of access to an upper berth, and one had been supplied to her, its fitness for the required purpose would have been assumed by the carrier.

It does not alter this situation to argue that this passenger ought not to have required anything to enable her to get into her berth; the fact is that she did, and made known her needs to the representative of the carrier having her cabin in his charge.

He did not say that he lacked the authority to respond to her request, nor suggest that she interview the purser, master or president of the company. He merely stated that he could not provide her with a lower stool.

She employed the stool in question for the ensuing five days of the voyage without difficulty or incident. On the morning of the sixth day, having had occasion to leave the cabin, she returned at about nine o'clock, and, while in the act of resuming her berth, i. e., while standing upon the stool, one of its legs broke, and she was caused to fall backwards (striking the back of her head upon the wash basin which is alongside the berth at the foot) to the deck of the cabin, where she laid unconscious for a few minutes. Under the ministrations of her daughter, she recovered consciousness, and was assisted to resume her berth.

The respondent denies that the leg of the stool broke, and the cabin steward so testifies in his deposition.

The truth lies either with Mrs. Oppenheim and her daughter, or with the steward. The latter was not in court, and the former were.

The choice is made of believing these two ladies, for the impression that they created was that of persons who would not deliberately testify falsely, even though one of them is an interested party. It is not a case of reasonable difference in recollection upon the part of observers. Either the leg of the stool broke, or it did not, and the court accepts and relies upon the affirmative testimony that it did.

Considering now whether the respondent can be said to have been negligent, it is to be observed that a duty rested upon it to comply with its passenger's reasonable request for a suitable device to afford to her convenient access to her berth. If the cabin steward could not procure for her the lower stool that she sought, it is thought that he should have relayed her request to his immediate superior for proper attention, and not content himself with a mere refusal or denial thereof.

Jarowski v. Hamburg-American Packet Co. (C. C. A.) 182 F. 320, 322, is helpful in

that it involves injury to a passenger suffered while she was trying to enter an upper berth without the aid of a ladder or set of steps. In reversing a judgment of dismissal, the Circuit Court of Appeals for this Circuit used the following expression: "Bearing in mind the very stringent obligations imposed upon carriers of passengers there is no doubt in our minds that plaintiff's proof entitled her to go to the jury. * * *"

The foregoing referred to a conflict of testimony as to how the injury was sustained. In this case, the evidence on that subject is not contradicted nor disputed. None the less the quoted expression indicates that the failure in that case of the carrier to provide a ladder was a departure from the stringent obligations imposed upon it.

■ In this case, the passenger specifically requested a suitable article to accomplish a purpose which she made known, and which may be regarded as peculiar to herself. No one other than Mrs. Oppenheim should now assume the burden of deciding whether, in fact, she required such a medium of access to her berth. Certainly, if the respondent's agent assumed to decide that she did not require what she told him she did, or that the article supplied was adequate for her purpose, then the necessary and natural consequences of that decision should be visited upon the respondent who made it.

If the foregoing is sound, it disposes of the cases cited by the respondent to the effect that the improper use of proper appliances cannot result in liability such as the libellants assert.

No case has been cited which presents facts nearly resembling those under examination, and it is thought that they are quite unusual.

■ It is argued that, because the passage ticket stipulated that the contract was to be governed by the laws of France, the libellants were required to plead and prove their rights to recover thereunder.

The libellants' cause sounds in tort, not contract.

If the tort is one of those "rudimentary contracts or torts made or committed abroad, such as promises to pay money for goods or services, or battery of the person, or conversion of goods" (Cuba R. Co. v. Crosby, 222 U. S. 473, 32 S. Ct. 132, 56 L. Ed. 274, 38 L. R. A. [N. S.] 40) this court can assume that the respondent would be liable for the injuries here involved, if it is not made to appear to the contrary by the respondent.

The difference between the assault shown in the case of Compagnie Generale Transatlantique v. Rivers (C. C. A.) 211 F. 294, 298, and the act of negligence found here, is in degree, not principle. If it was appropriate there to observe, as the court did: "If the law of France is peculiarly tender towards common carriers of passengers, it was for defendant to show it," it is also appropriate so to observe in this case.

If passengers upon ships carrying the French flag, plying regularly between New York and the ports of France, are entitled to receive, at the hands of the carrier, a less degree of care than those who travel upon ships flying the American flag, it would seem only fair to require notice to that effect in the contract of passage, or a showing to that effect by the carrier, when called upon to respond to such a claim as is here asserted.

■ The contract of passage will be examined in vain for any notice to the effect that the carrier assumes toward the passenger any restricted obligation which would exclude the claims here asserted; paragraph VII has to do with injuries to the person or property of the passengers resulting "from accidents, fire, explosion, perils of the sea, weather conditions or unforeseen circumstances, or from barratries, faults or negligences whatsoever of the Captain, of the pilot, of the sailors, or of the members of the crew or of the passengers or of any other person on board or employed in any capacity whatsoever." This paragraph is thought clearly to refer to a happening to the vessel, and not to an act of negligence as between the carrier and a passenger unrelated to such an incident.

Such is shown in part by the requirement of paragraph XIII that no claim "of whatever nature it may be, even in case of personal injury, will be valid if it has not been presented in writing within three days of the steamer's arrival * * *."

No defense is argued under this clause, and none has been considered, because the proof shows that the ship's surgeon attended Mrs. Oppenheim on the morning that the ship made this port, and so learned from her the nature and cause of her injury. His record of that consultation was perhaps deemed to meet the above requirement.

The libellants may take the usual decree, with costs, to be settled on three days' notice.

If findings are desired, they may be settled at the same time, and are to embody appropriate recitals of ownership and incorporation.